**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ZURICH AMERICAN INSURANCE** | : | |
| **COMPANY, as subrogee of** | : | |
| **BRANYWINE CIRA WALNUT I, LP** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 20-2180** |
| | : | |
| **A.T. CHADWICK COMPANY, INC.** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LIMBACH COMPANY, LLC, et al** | : | |

---

**McHUGH, J.**                                                              **February 11, 2022**

<u>**MEMORANDUM**</u>

      This case is a straightforward subrogation action arising out of property damage.  Plaintiff

Zurich American Insurance Company is seeking reimbursement for a substantial loss it covered

for Brandywine Cira Walnut, LP resulting from a water leak within a residential and office tower.

Zurich sued A.T. Chadwick Company, Inc., the entity responsible for making a permanent repair

to the pipe.  Seeking to spread the liability, Chadwick in turn filed an Amended Third-Party

Complaint against other parties involved in some way in the repair of the pipe, seeking

contribution and indemnification. These include Limbach Company, LLC, Able Service, Inc.,

and AKA Management I, LLC. Limbach now moves for summary judgment, a motion opposed

by A.T. Chadwick and Able Service.  Chadwick's claim for indemnity will be dismissed as

patently lacking in merit.  As to its contribution claim for negligence, the case against Limbach

is far from robust, but it is conceivable that a jury might assign some percentage of liability against

Limbach, and for that reason the motion must be denied.

I.      **Factual and Procedural Background**

On May 13, 2018, a water leak from a pipe was discovered on the 46th floor of the FMC Tower at Cira Centre South, located at 2929 Walnut Street, Philadelphia, PA 19104.  Am. Third Party Compl. ¶ 6, ECF 20.   The Property Manager, AKA Management I, LLC ("AKA"), contacted Limbach Company, LLC ("Limbach"), the preventative maintenance contractor for the subject property, to address the leak.  *Id.* ¶ 7; Compl. ¶ 16, ECF 1; Dep. Cory Monroe, 24:11-25:9, ECF 61- 6, Ex. C.  During the afternoon of May 13, 2018, a Limbach employee performed a temporary repair of the leak using plumbing tape and metal clamps.  Am. Third Party Compl. ¶ 7; Dep. Monroe, 25:21-26:25, 27:10-12.   A photograph was taken immediately following the temporary repair, showing a taped and clamped pipe without any bend in it.  ECF 61-7, Ex. D.

On May 14, 2018, a representative of AKA spoke with the Chief Engineer of the property, an employee of Able Service, Inc. ("Able"), and determined that they would contact A.T. Chadwick Company, Inc. ("A.T. Chadwick"), the mechanical subcontractor who had installed the plumbing lines at the property, regarding the leak.  Dep. Cory Monroe, 31:13-31:22; 43:15-43:21; Dep. Robert Gaul 23:19-24:10, ECF 61-9, Ex. F.

On May 15, 2018, Robert Gaul, an employee of A.T. Chadwick went to the subject property, inspected at the leak, and stated that A.T. Chadwick would make a permanent repair.  Dep. Robert Gaul, 28:23-29:7; 38:24–39:7; 42:3–42:11; 106:5-9.  A photograph was taken of the pipe at that time, showing the taped and clamped pipe, which was no longer straight, but quite obviously sagging.  ECF 61-10, Ex. G.

On May 17, 2018, before A.T. Chadwick made the permanent repair, the temporary repair stopped holding the pipe together and a substantial water loss occurred, causing damage to multiple floors of the building.  Dep. Cory Monroe, 48:17-49:1.

II.     **Standard of Review**

This Motion is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986).

III.    **Discussion:**

A.   Limbach's Legal Duty

Limbach contends that it had no relationship with Chadwick that would give rise to a legal duty.  It is correct to the extent that there was no contractual or business relationship that would give rise to a duty.  But Limbach was retained by Brandywine to inspect and make a temporary repair, and Zurich stands in the shoes of Brandywine.  If Limbach breached its duty to Brandywine, that it relevant in determining whether it is jointly liable for the damage sustained. And Limbach's duty extends more broadly under Pennsylvania law: "[i]n creating temporary conditions, a contractor has a duty to use reasonable care to create those conditions safely for those whom the contractor has reason to know may be affected." *Reformed Church of Ascension v. Theodore Hooven & Sons, Inc.*, 764 A.2d 1106, 1110 (Pa. Super. Ct. 2000); *Bastl v. Papale*, 15 A.2d 476, 478 (Pa. Super. Ct. 1940) (finding that although owner had accepted contractor's sidewalk repair work, contractor still owed a duty to users of sidewalk, and he was properly charged with negligence in failing to anticipate and guard against a foreseeable dangerous condition created by him).

Furthermore, a key factor in the recognition of a legal duty is the nature of the risk and the foreseeability of harm. *Althaus v. Cohen,* 756 A.2d 1166, 1169 (Pa. 2000).  The temporary repair here was not to a backyard garden hose but to a water line on the 46th floor of a high-rise building where a failure of any repair would likely have significant consequences "downstream" on lower

floors, as proved to be the case given the extent of the damages.  It cannot be said that Limbach owed no duty with respect to its temporary repair.

      B.  <u>Indemnity Claim</u>

A.T. Chadwick's third-party claim against Limbach seeks damages for indemnification and contribution, alleging Limbach's negligence in performing the temporary repair.  Common law indemnity is "a fault shifting mechanism, operable only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss."  *Sirianni v. Nugent Bros., Inc.*, 506 A.2d 868, 871 (Pa. 1986).   Only a party entirely free from fault can seek indemnification. *Rivera v. Philadelphia Theological Seminary of St. Charles Borremeo,* 507 A.2d 1 (Pa. 1986).  If a party plays "any part" in causing injury, it cannot claim indemnity.  *Sirianni,* 506 A.2d at 871.

On the record here, a reasonable jury could not conclude that Chadwick played no role in causing the loss.  It was on-site by May 15th with the opportunity to inspect the pipe and the temporary repair that had been made.  Chadwick had been the original installer and there is evidence that it assumed responsibility for a permanent repair but failed to address the situation before the leak reopened on May 17th.  Chadwick advances various arguments about the extent of the information it had, going so far as to contend that Limbach in some way obscured the nature of the temporary repair.  These arguments falter upon review of the photograph taken following the interim repair, ECF 61-7, Ex. D, which would allow even a homeowner of reasonable sophistication to recognize the temporary nature of the fix.  Even if Chadwick's representative did not see the photograph of the original repair for purposes of comparison, he would have had access to the site of the leak to assess it as of May 15th.   And to the extent that counsel seems to suggest the repair was inaccessible because of its location, one would assume that a contractor of

Chadwick's size and sophistication could move the lightweight panels of a drop ceiling for purposes of inspection.[1]

 At best, Chadwick can invoke a right of contribution by showing negligence on the part of another joint tortfeasor.  *McLaughlin v. Nahata*, 260 A.3d 222, 230 (Pa. Super. Ct. 2021); 42 Pa. C. S. A. §§ 8321–27.

C.  Contribution Claim

Limbach argues that the undisputed facts of record relieve it of liability as a matter of law. As noted above, Chadwick's case for imposing liability on the parties it has joined is far from compelling.  But it cannot be said that it has no case.

The issue of negligence must be submitted to the jury except where it is entirely free from doubt.  *Emerich v. Phila. Ctr. for Human Dev., Inc.*, 720 A.2d 1032, 1044 (Pa. 1998).  The determination of what constitutes reasonable conduct is highly fact-specific and calls upon the unique ability of the jury to assess conduct in context.[2]   A jury could impose some measure on responsibility on Limbach depending upon its view of the evidence.

---

[1] Chadwick cites selectively to the deposition of Thomas Harkanson, an AKA employee who accompanied the AT Chadwick employee to inspect the pipe.  It omits his testimony that, "I saw a section of the hot water pipe that looked like it had been patched and it was bubbled out very badly," and his consensus with AKA's representative that "we looked at each other and said this -- this isn't good, this -- this has to get fixed."  Harkanson Dep.  39:19-21; 40:13-15, Jan. 12, 2022, ECF 69-2.

[2] One of the classic formulations of this rule is set forth in a 19th century case from the Pennsylvania Supreme Court:

[W]henever the standard of duty shifts, not according to any fixed rule, but with the facts and circumstances developed at the trial, the question of negligence cannot be determined by the court, but must be submitted to they [sic] jury.  *Schum v. Pennsylvania R. Co.*, 107 Pa. St. 8, 12, and *Pennsylvania R. Co. v. Coon*, 111 Pa. St. 430, 440, 3 Atl. Rep. 234. Negligence is the absence of care according to the circumstances, and is always a question for the jury when there is a reasonable doubt as to the facts, or as to the inferences to be drawn from them. When the measure of duty is ordinary and reasonable care, and the degree of care varies according to circumstances, the question of negligence is necessarily

In that regard, there are genuine disputes of material fact regarding Limbach's temporary repair and the point at which responsibility shifted to Chadwick.   Moreover, Chadwick challenges the adequacy of the temporary repair, and there is certainly no dispute that it failed to hold.

Limbach also asserts that there was sufficient passage of time, as well as acts or omissions by other parties, that served as superseding causes that would "cut off any potential claim of negligence" against Limbach.   ECF 61-1 at 6.   "A superseding cause is an act of a third person or other force which, by its intervention, prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Von der Heide v. Com., Dep't of Transp.*, 718 A.2d 286, 288 (Pa. 1998) (quoting Restatement (Second) of Torts § 440). In determining whether an intervening force is a superseding cause, the test is whether the intervening conduct was so extraordinary as not to have been reasonably foreseeable. *Id.* Consequently, "[u]nless the evidence is such that reasonable men cannot disagree, the question of whether the defendant's conduct is the cause of the injury is one for the jury." *Curran v. Stradley, Ronon, Stevens & Young*, 521 A.2d 451, 454 (Pa. Super. Ct. 1987).

Although A.T. Chadwick's explanation for the loss, assuming the jury finds it credible, appears to suffer from many weaknesses, I cannot conclude without hearing the evidence that no reasonable jury could find in Chadwick's favor to some degree.

---

for the jury.   *Pennsylvania R. Co. v. White*, 88 Pa. St. 329, 333.   It is impossible to formulate a fixed rule of duty applicable to all cases.

*Pa. R. Co. v. Peters*, 116 Pa. 206, 215–16 (1887).

**IV.**     <u>**Conclusion**</u>

For the reasons set forth above, Third Party Defendant's Motion for Summary Judgment

will be denied.  An appropriate order follows.


 /s/ Gerald Austin McHugh
United States District Judge